IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  13-cv-02043-RM-KLM

STEVEN LUCKENBILL,

    Plaintiff,

v.

DOUGLAS GOETZ,
WENDY HABERT,

    Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant Douglas Goetz ("Goetz") and Defendant Wendy Habert's ("Habert" and collectively, with Goetz, "Defendants") **Motion to Dismiss in Lieu of an Answer** [#20][1] (the "Motion"). The Motion is referred to this Court for recommendation regarding disposition [#22]. Plaintiff Steven Luckenbill, who proceeds in this matter pro se, filed a Response to the Motion [#29]. Defendants filed a Reply [#21].[2]  The Court has reviewed the Motion, the Response, the Reply, the entire

---

[1] "[#20]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Plaintiff failed to respond to Defendants' Motion by the original November 11, 2013 deadline. On November 19, 2013, Defendants filed a Reply, in which they argued that "in addition to failing to state a claim, Plaintiff's Amended Complaint should also be dismissed for his failure to prosecute his case and his failure to comply with the Federal Rules of Civil Procedure, pursuant to Fed. R. Civ. P. 41(b)." Reply [#21] ¶ 5. Plaintiff filed a Motion for Extension of Time out of Time [#24]. The Court granted this motion by Minute Order [#26], extending the deadline to December 31, 2013. Minute Order [#26] at 1. Therefore, Plaintiff's Response [#29] was timely filed.  The Court makes no further mention of the Reply [#21] because the Reply does not make substantive

docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#20] be **GRANTED**.

## I. Summary of the Case

On September 2, 2013, Plaintiff filed his Amended Prisoner Complaint [#7] (the "Complaint") alleging that Defendants violated his Eighth Amendment right to adequate medical care while he was incarcerated at El Paso County Jail. *Compl.* [#7] ¶ 17. Plaintiff claims that Defendants were deliberately indifferent to Plaintiff's serious medical needs because they failed to ensure Plaintiff received medical treatment for Hepatitis C Virus ("HCV").[3]  *Id.* ¶¶ 15-16. As a result, Plaintiff seeks monetary damages. *Id.* ¶ 30. Specifically, "[he] prays for judgment in his favor and damages in his favor against all defendants in an amount sufficient to compensate him for the pain and mental anguish suffered by him . . . ." *Id.* Plaintiff brings his claims under 42 U.S.C. § 1983 and asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1343. *Id.* ¶ 4.

The Court has construed Plaintiff's Complaint to assert claims against Defendants in their official capacities. The Complaint explicitly states that Defendants are sued in their official capacities. *Compl.* [#7] ¶ 2 ("[Defendant Goetz] is sued in his official capacity), ¶ 3 ("[Defendant Habert] is sued in her official capacity."). All of Plaintiff's allegations concerning Defendants focus on their official actions as employees. *Id.* [#7] ¶ 15 ("As the CEO of Correctional Healthcare Companies, Inc., Defendant Douglas Goetz signed the

---

legal arguments related to Defendants' Motion.

   [3] Plaintiff does not clearly assert whether he alleges a delay or a denial of medical treatment on the part of Defendants. The Court considers Plaintiffs allegations to assert both a delay and a denial of medical treatment in order to construe Plaintiff's pleadings in the light most favorable to him.

current contract . . . and as a result, is ultimately responsible for proper administration of this contract"), ¶ 16 ("[As Health Services Administrator, Defendant Habert] is the person whose responsibility includes ensuring that standards of care and treatment protocols are followed."). In addition, the case law Plaintiff cites in the Complaint discusses only the duties of prison officials in their official capacities. *Id.* ¶¶ 17-18. His pleadings' two references to Defendants in their individual capacities, on the other hand, occur in boilerplate language that Plaintiff fails to support with allegations or legal argument. *Id.* at 1 ([Plaintiff sues Defendants] [i]ndividually and in their official capacities."); *Response* [#29] at 9 ("[Defendants are] personally liable for [their] violations under the Eighth Amendment."). These isolated and conclusory statements do not put Defendants on notice that they are being named in their individual capacities, as required by Fed. R. Civ. P. Rule 8. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"); *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1371 (10th Cir. 1979) ("The essential function of a complaint under modern pleading is . . . to give opposing parties fair notice of the basis of the claim against them so they may respond to the complaint . . . ."). Indeed, Defendants do not address claims against them in their individual capacities in the Motion or the Reply. *E.g. Motion* [#20] at 3 ("Plaintiff asserts an Eighth Amendment claim against Defendant Douglas Goetz, as the CEO of Correctional Healthcare Companies, Inc. . . . . Plaintiff asserts an Eighth Amendment claim against Defendant Wendy Habert, as the Health Service Administrator for Correctional Healthcare Companies, Inc. . . . ."). Further,

the Court should not "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d, 1106, 1110 (10th Cir. 1991)). Accordingly, Plaintiff's pleadings, read in the light most favorable to him, assert claims against Defendants in their official capacities only.

According to Plaintiff, in October 2009, while he was incarcerated by the Federal Bureau of Prisons in Littleton, Colorado, a prison physician diagnosed him with HCV. *Id.* ¶ 10. In May 2012, while he was incarcerated at the El Paso County Jail ("Jail") in Colorado Springs, Colorado, he underwent a medical screening. *Id.* ¶ 6, 15. Plaintiff alleges that Correctional Healthcare Companies, Inc. ("CHC") contracts with the El Paso County Jail to provide health services to inmates, and that the medical screening was conducted by CHC staff.[4] *Id.* Plaintiff alleges that he informed CHC staff at that time that he has chronic HCV. *Id.* ¶ 6. According to Plaintiff, "[he] kept asking CHC staff for medications and was told that he could not get medications." *Id.* Plaintiff alleges that CHC staff placed him on HCV monitoring, drew his blood, examined his liver, and scheduled a follow-up appointment. *Id.* Plaintiff maintains that he received the same medical care during his follow-up appointment. *Id.* ¶ 7. According to Plaintiff, "[he] asked [CHC staff members] why [they] won't treat [him] and was told that '[i]t's policy and that he would get

---

[4] Plaintiff's allegations frequently do not specify either the identity or job title of the members of CHC staff with whom he interacted. *Compl.* [#7] ¶ 6, ("Plaintiff asked CHC staff for treatment to stop the further deterioration and damage to his liver."), ¶ 26 ("Plaintiff sent an Inmate Health Service Request to the Medical Department of CHC . . . . The response from CHC staff was "You are on schedule to discuss concerns."). Because Plaintiff's allegations must be construed in the light most favorable to Plaintiff for purposes of considering the Motion, the Court construes Plaintiff's mentions of "CHC" to denote "CHC staff," that is, staff members of CHC who were under Defendant Habert's direct supervision.

4

treatment if he got out or went to prison.'" *Id.* Plaintiff stated that he left the El Paso County Jail on bond in September 2012. *Id.* ¶ 8.

According to the Complaint, on February 13, 2013, Plaintiff was again incarcerated at the El Paso County Jail. *Id.* ¶ 9. He alleges that at that time CHC staff conducted another medical screening of him. *Id.* Plaintiff further alleges that, at a later date, CHC staff conducted a health assessment and placed him on HCV monitoring. *Id.* ¶ 10. Plaintiff avers that, during this appointment, he signed a release for his prison medical records. *Id.* After Plaintiff's health assessment, he alleges that he sent "many medical 'kites' and requests for treatment." *Id.* ¶ 11. On May 18, 2013, Plaintiff alleges that he requested medical treatment for his HCV and told CHC staff that he had Medicaid insurance. *Id.* ¶ 15.

According to Plaintiff, CHC staff told him that "[he was] not covered by [his] medical insurance while in jail." *Id.* On May 20, 2013, Plaintiff avers that he sent an Inmate Health Service Request ("Request") to CHC inquiring into CHC's treatment policy on HCV and CHC's continued denial of HCV medication. *Id.* ¶ 24. According to Plaintiff, CHC staff responded that "[Plaintiff's] labs are not at levels required to treat the disease." *Id.* On May 25, 2013, Plaintiff alleges that he sent a Request to CHC "asking about [HCV] levels and it [sic] they will increase over time." *Id.* ¶ 25. According to Plaintiff, CHC staff responded that it would schedule an appointment to discuss Plaintiff's questions with him. *Id.* On May 30, 2013, Plaintiff alleges that he sent a Request to CHC asking if his HCV levels would increase without medical treatment. *Id.* ¶ 26. According to Plaintiff, CHC responded that "[Plaintiff was] on schedule to discuss concerns." *Id.* On May 31, 2013, Plaintiff alleges

that he sent a Inmate Staff Communication form to CHC, in which he stated that "he has asked continually for the policy on [HCV] and has questions about treatment that have not been answered." *Id.* ¶ 27. According to Plaintiff, CHC staff responded that it does not treat HCV unless an inmate is "very sick," and a staff member would discuss this matter with Plaintiff during his scheduled appointment. *Id.* Sometime after Plaintiff's health assessment, he avers that CHC staff stopped monitoring his HCV.[5] *Id.* ¶ 13. Plaintiff further alleges that, after June 2, CHC staff resumed monitoring Plaintiff's HCV and ordered laboratory tests to determine Plaintiff's HCV levels. *Id.* On June 7, 2013, Plaintiff alleges that he sent a Request for CHC's policy on treating HCV. *Id.* ¶ 28. According to Plaintiff, CHC staff told Plaintiff that it had ordered liver tests for Plaintiff, scheduled an appointment with Plaintiff, and provided Plaintiff with additional information.[6] *Id.* Plaintiff alleges that, at his next medical appointment, Dr. Wright, a CHC physician, told Plaintiff that CHC policy prohibited Dr. Wright from prescribing HCV medication, but "if it was up to [Dr. Wright], he would have prescribed treatment medications months ago." *Id.* ¶ 14. According to Plaintiff, Dr. Wright told him that his liver would deteriorate without medical treatment. *Id.*

Plaintiff alleges that Defendant Goetz is responsible for Plaintiff's medical treatment because Defendant Goetz signed the contract between Correctional Healthcare Companies, Inc. and the Jail (the "Contract") in Goetz's official capacity as CHC chief

---

[5] Plaintiff does not provide a date on which CHC staff allegedly stopped monitoring his HCV.

[6] Plaintiff does not specify what additional information he received from CHC staff. Based on Plaintiff's allegations in the Complaint, the additional information may be the Centers for Disease Control and Prevention's information sheet on HCV that Plaintiff received from CHC staff in response to a grievance. *Compl.* [#7] ¶ 11.

executive officer ("CEO"). *Id.* ¶ 15. According to Plaintiff, Defendant Goetz failed to supervise the implementation of CHC policy. *Id.* Plaintiff, citing the Contract, alleges that CHC policy requires: (1) that inmates have access to timely healthcare; (2) that inmates face no barriers to receiving healthcare; and (3) that a pre-trial detainee's insurance remains in effect until the detainee is convicted. *Id.*

Plaintiff, citing the Contract, alleges that it is CHC policy to implement the Infection Control Program ("ICP"). *Id.* Plaintiff maintains that treatment of infectious diseases is under the purview of the ICP. *Id.* Plaintiff cites the Centers for Disease Control and Prevention's ("CDC") classification of HCV as an infectious disease. *Id.* Plaintiff alleges that Defendant Habert, as CHC's Health Services Administrator ("HSA") at the Jail, is responsible for "ensuring that standards of care and treatment protocol are followed" because the Contract deemed the onsite HSA the "responsible health authority." *Id.* ¶ 16. According to Plaintiff, Defendant Habert personally participated in the denial of Plaintiff's HCV treatment because Habert did not "approv[e] the diagnosis, lab tests or treatments for [Plaintiff's HCV], and faile[d] to supervise the administration of the [ICP]." *Id.* ¶ 16.

In the Motion, Defendants seek dismissal of Plaintiff's Eighth Amendment claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Motion* [#20] at 1. First, Defendants argue that "Plaintiff's claim fails to allege personal participation by Defendant Goetz." *Id.* at 4. Second, Defendants aver that Plaintiff's medical treatment allegations "are insufficient to state a claim for deliberate indifference against Defendant Habert." *Id.* at 6. Finally, Defendants maintain that "Plaintiff fails to allege that he suffered

any injury."[7]  *Id.* at 10.

In his Response, Plaintiff argues that CHC staff's customary delays and denials of medical treatment at the Jail were equivalent to a written policy created by Goetz, and that Goetz had final policymaking authority under the Contract.  *Response* [#29] at 6-7.  With respect to Defendant Habert, Plaintiff argues that Habert was responsible for "ensuring that standards of care and treatment protocols [were] followed," and that both she and Defendant Goetz exhibited deliberate indifference to the health, safety, and medical needs of inmates who have HCV, including Plaintiff, and inmates who risk exposure to HCV.  *Id.* at 7.  Plaintiff further argues that, despite his repeated requests, CHC staff never discussed the results of his medical examinations with him, nor gave him any documentation of the examinations' results.  *Id.* at 8.

## II.  Standard of Review

### A.  Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins*

---

[7] In the Motion, Defendants cite only to § 1983 in support of their argument, without additional legal support or helpful legal argument.  *Motion* [#20] at 10.  Under § 1983, "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  In other words, § 1983 requires a constitutional injury.

8

*v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 678.

**B.    Substantial Deference Accorded to Prison Administrators**

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively.  *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances.  *Taylor v. Freeman*, 34 F.3d 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems.  It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'"  *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted).  As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts."  *Taylor*, 34 F.3d at 269 (citations omitted).

**C.    Plaintiff's Pro Se Status**

The Court must construe the filings of a pro se litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall*, 935 F.2d at 1110.  The Court, however, should not be the pro se litigant's advocate, nor should the Court "supply additional factual

allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney*, 113 F.3d at 1173-74 (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.  Analysis

**A.     Failure to State a Constitutional Violation Under Rule 12(b)(6)**

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," *id.* at 104 (quoting *Gregg*, 428 U.S. at 173).

Facts speaking to the personal participation of a defendant in a supervisory role are required to state a § 1983 claim against an individual. *See, e.g., Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2003) (recognizing that "the supervisor must be personally involved in the constitutional violation . . ."). Once personal participation is established, the test for deliberate indifference is both objective and subjective. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). Plaintiff must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and that (2) Defendants subjectively knew of and disregarded

"an excessive risk to [the prisoner's] health or safety," *id.* at 837.

### 1.     Personal Participation

"Personal participation is an essential allegation in a Section 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). Therefore, "individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)). A defendant was personally involved in an alleged constitutional violation only if there is an "affirmative link" between his conduct and the alleged violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001); *see Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for constitutional violations allegedly committed by his or her subordinates. *Serna*, 455 F.3d at 1151 ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) (quoting *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984)) ("'[T]here is no concept of strict supervisor liability under section 1983.'").

Historically, courts have held that a defendant in a supervisory position may be personally involved in an alleged constitutional violation committed by his or her subordinates in two situations. First, supervisor liability may arise when the supervisor was personally involved in directing the subordinates to take the action that resulted in the alleged constitutional violation. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992). Second, supervisor liability may arise when the supervisor had actual

knowledge that the subordinates were committing the alleged constitutional violation and acquiesced in its commission. *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence"). Recent case law, however, makes clear that the simple fact that a supervisor knew of and acquiesced in a constitutional violation committed by subordinates may no longer establish that he or she was personally involved in the violation. *See Arocho v. Nafziger*, 367 F. App'x 942, 947 n.4 (10th Cir. 2010) (citing *Iqbal*, 556 U.S. at 677). As stated by the United States Supreme Court: "In a § 1983 suit or a *Bivens* action . . . the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. In *Dodds v. Richardson*, the Tenth Circuit Court of Appeals interpreted and applied this language as follows:

> Whatever else can be said about *Iqbal*, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

*Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (citation omitted). The *Dodds* court, however, noted that "*Iqbal* may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit[.]" 614 F.3d at 1200.[8] The Tenth Circuit also

---

[8] After *Iqbal*, many circuits that previously had held supervisors liable when they knew of and acquiesced in the unconstitutional conduct of subordinates have expressed some doubt over the continuing validity of that form of liability. *See, e.g., Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009); *Maldonado v. Fontanes*, 568 F.3d 263, 274 n.7 (1st Cir. 2009).

recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by [a supervisor's] subordinates and [a supervisor's] 'adoption of any plan or policy' . . . showing their authorization or approval of such misconduct." *Id.* at 1200-01 (citation omitted).

Here, Plaintiff speaks in generalities with respect to Defendant Goetz's personal participation in the alleged delay and denial of medical treatment to him at the Jail. Indeed, Plaintiff admits that "Defendant Goetz did not personally see Plaintiff or provide hands on treatment." *Response* [#29] at 7. Plaintiff asserts that Defendant Goetz is "ultimately responsible for proper administration of this contract" because of Defendant Goetz's role as signatory. *Compl.* [#7] ¶ 15. In addition, Plaintiff alleges that Defendant Goetz's "'affirmative link' lies in his failure to supervise." *Id.* Plaintiff's allegations are conclusory and do not allege any knowledge, authorization, or approval of the alleged unconstitutional conduct by Defendant Goetz. Plaintiff's unfettered and unsupported assertion that a CEO who signed a contract has contractual duties to implement or supervise policies outlined in the contract lacks merit. For example, a cleaning company president's mere execution of a contract to clean buildings does not mean that she is obligated to implement company policies regarding the cleaning solutions to be used or to directly supervise the employees who carry out the cleaning work. Other facts, besides her mere execution of the contract, are needed to demonstrate that the company president has such responsibilities. Accordingly, Plaintiff demonstrates no actual "affirmative link" between the allegedly unconstitutional acts and Defendant Goetz's execution of the contract. *Dodds*, 614 F.3d at 1200-01. Thus, Plaintiff's allegations are insufficient to establish personal participation on the part of Defendant Goetz, and Plaintiff has failed to "[nudge his claim] across the line

from conceivable to plausible." *Twombly*, 550 U.S. at 569.

With regard to Defendant Habert, Plaintiff alleges that she is the onsite HSA and, as such, is responsible for supervising CHC medical staff and administering CHC's ICP. *Compl.* [#7] ¶ 16. Plaintiff further alleges that Defendant Habert did not approve diagnoses, laboratory tests, and treatment for his HCV.[9]  *Id.*  According to Plaintiff, Habert knew or should have known of CHC staff's "widespread practice" of denying inmates treatment for HCV.  *Response* [#29] at 6.  Habert's actual or constructive knowledge, however, may not meet the threshold required for personal participation.  *See Dodds*, 614 F.3d at 1200-01 ("[There must be] an 'affirmative' link . . . between the unconstitutional acts by [a supervisor's] subordinates and [a supervisor's] 'adoption of any plan or policy' . . . showing their authorization or approval of such misconduct.").  Notwithstanding this reservation, Habert's alleged responsibility for overseeing inmates' medical care overcomes the threshold required for personal participation.  *See Woodward,* 977 F.2d at 1400 (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990))  (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence").  Thus, Plaintiff demonstrates the active participation required in an "affirmative link" between the constitutional injury and Defendant Habert.  *Dodds*, 614 F.3d at 1200-01.

The Court, therefore, respectfully **recommends** that the Motion [#20] be **granted** in so far as it requests that the claim against Defendant Goetz be dismissed pursuant to

---

[9] Plaintiff does not provide specific instances when Defendant Habert allegedly denied medical care for his HCV.  Yet, as admitted by Defendants in their Motion, Plaintiff's general allegations concerning personal participation suffice at this stage of the case.  *Motion* [#20] at 6.

Fed. R. Civ. P. 12(b)(6), and that Plaintiff's Eighth Amendment claim against Defendant Goetz be **dismissed without prejudice**.[10] As this disposes of Plaintiff's only claim for relief against Defendant Goetz, the Court further **recommends** that Goetz be **dismissed** as a Defendant in this case.

### 2. Objective Prong

Because Plaintiff has alleged sufficient facts concerning Defendant Habert's personal participation in the delay or denial of his medical treatment, the Court considers the remainder of the test for deliberate indifference with respect to Defendant Habert. The objective prong of the test is met if the "harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause" of the Eighth Amendment. *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). In *Mata*, the Tenth Circuit explained that it is the harm claimed by the inmate that must be sufficiently serious to satisfy the objective component, and not solely "the

---

[10] The dismissal of an action pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial. *Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *accord Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice"); *see also Tepper v. Van Dam*, 974 F.2d 1345, 1992 WL 219037, at *3-4 (10th Cir. 1992) (relying on *Okusami*, *Brierly*, and *Cortec* to affirm dismissal of an action with prejudice) (unpublished table decision). However, due to heightened concerns when the plaintiff is proceeding pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d, 1272, 1275 (10th Cir. 2001); *see Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citations omitted) ("[O]rdinarily the dismissal of a *pro se* claim under Rule 12(b)(6) should be without prejudice, and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint."); *Brereton v. Bountiful City Corp.*, 434 F.3d, 1213, 1219 (10th Cir. 2006) (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997)) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

symptoms presented at the time the prison employee has contact with the prisoner." 427 F.3d at 753. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (further quotation omitted); *Oxendine*, 241 F.3d at 1276 (quoting *Hunt*, 199 F.3d at 1224) ("[A] medical need is considered 'sufficiently serious' [for Eighth Amendment purposes] if the condition 'has been diagnosed by a physician as mandating treatment . . . .'").

Here, Plaintiff alleges that CHC staff under Defendant Habert's supervision delayed or denied Plaintiff medical treatment due to a policy, not a medical decision. *Compl.* [#7] ¶¶ 7, 14. Plaintiff further alleges that CHC staff did not treat him per CHC policy. *Id.* ¶ 7. Plaintiff asserts that CHC staff told him "he would get treatment if he got out [of Jail] or went to prison." *Id.* Furthermore, according to Plaintiff, Dr. Wright told Plaintiff that he would have prescribed medical treatment for Plaintiff if CHC allowed prison medical staff to treat inmates with HCV. *Id.* ¶ 14. These allegations present a "sufficiently serious" condition for the purposes of a deliberate indifference claim because, according to the allegations, Dr. Wright would have mandated medical treatment for Plaintiff if Dr. Wright could have done so. *Mata*, 427 F.3d at 752-53.

Finally, Plaintiff must show "deliberate refusal to provide medical attention, as opposed to a particular course of treatment." *Fleming v. Uphoff et al.*, 210 F.3d 289, 2000 WL 374295, at *2 (10th Cir. April 12, 2000) (quoting *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)) (unpublished table decision). "Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one

course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (citation omitted). As such, an inmate's difference of opinion concerning the medical treatment that he receives does not generally support a claim for cruel and unusual punishment. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). "[A] prisoner's right is to medical care—not to the type or scope of medical care which he personally desires." *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (citation omitted). While a plaintiff's disagreement with the course of treatment employed by prison medical staff may "amount[ ] to a medical malpractice claim cognizable in state court . . . a medical malpractice claim does not become a constitutional violation simply because the plaintiff is a prisoner." *Pearson v. Simmons*, No. 95-3006, 1998 WL 154552, at *2 (D. Kan. Mar. 17, 1998) (citations omitted). The allegations in the Complaint make clear that Plaintiff received consistent medical attention from CHC staff. *Compl.* [#7] ¶¶ 6-7, 9-10, 14. As alleged by Plaintiff, upon his arrival at the Jail, CHC staff placed him on HCV monitoring but denied his request for medication. *Id.* ¶ 6. Plaintiff alleges that he continued to request medical treatment but "was told that his levels were not high enough to be treated for chronic [HCV] . . . ." *Id.* at 11. Plaintiff fails to allege any negative consequences from the denial of HCV medication, aside from speculation regarding potential deterioration of his liver. In short, Plaintiff wanted HCV medication, and disagreed with medical staff's assessment of his medical needs and decision not to provide medication. Thus, Plaintiff merely disagrees with his course of treatment, and his allegations do not demonstrate a "deliberate refusal to provide medical attention." *Fleming*, 210 F.3d at *2.

Accordingly, Plaintiff has not met his burden of alleging that CHC staff, under

Defendant's Habert's supervision, deliberately refused him medical attention. Plaintiff fails the objective prong, and, therefore, his claim against Defendant Habert must also fail. For that reason, the Court need not examine Plaintiff's Eighth Amendment claim against Defendant Habert under the subjective prong. The Court, therefore, respectfully **recommends** that the Motion [#20] be **granted** in so far as it requests that the claim against Defendant Habert be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), and that the claim for deliberate indifference against Defendant Habert be **dismissed without prejudice**.[11] The Court further **recommends** that Habert be **dismissed** as a Defendant in this case.

## IV. Conclusion

Accordingly, for the reasons stated above, the Court respectfully **RECOMMENDS** that Defendants' Motion [#20] be **GRANTED**, and that Plaintiff's Eighth Amendment claims against Defendants Goetz and Habert be **DISMISSED without prejudice.**

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must

---

[11] *See* n.10, *supra.*

be both timely and specific to preserve an issue for de novo review by the district Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  June 9, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge